Good morning, Your Honors. May it please the Court. James Crawford on behalf of Mr. Lazo-Romero. As the Court is aware, primarily the issue I want to focus on is the waiver of the right to counsel. As the Court knows, Mr. Lazo-Romero had a basic fundamental right to be represented during all critical stages of the proceeding. He originally had indicated to the Court that he wished or desired to represent himself, and the Court took a Faretta waiver. But on June 16, 2005, both the District Court and the Government expressed a concern or expressed a doubt over Mr. Lazo-Romero's competency to stand trial. Under 18 U.S.C. 4247, competency proceedings were initiated. The Court asked that a psychological exam be performed. From approximately June 2005 until September 2005, Mr. Lazo-Romero was continuing to represent himself. He had standby counsel, but as even recognized by the U.S. Supreme Court, standby counsel has a limited function or a limited role. And there was a psychological evaluation done, as I recall? Yes, Your Honors. And it came back there's nothing wrong with him? It had antisocial behavior disorder. And I believe one of the reasons Which means he commits crimes, basically? Basically. I think that's what it was. It's not even a disease or a disorder recognized in the DSM-IV. But nothing that would indicate that he was incapable of representing himself or knowing what, understanding the proceedings that were going on around him. Nothing in that examination, correct, Your Honor. But I believe that's one of the paramount concerns that I have. One of the problems, right, is that there was no competent counsel appointed at the time to even challenge the psychiatric evaluation itself. That's correct, Your Honor. And, in fact, the psychiatric evaluation contains some misstatements of the facts, which I'll ask the government counsel about in a minute. But so if he – I mean, since there was a doubt as to his competency to represent himself, your argument is that at that point, he should have had somebody come in and represent him to review the psychiatric report, to challenge its sufficiency, to maybe demand a hearing? That's right. I think if the Court looks at Godness v. Moran and Godness, it indicated it recognizes the right under Feretta to waive the right to counsel. But when there – you can't have both. If there's a doubt over a defendant's competency to stand trial, counsel must be appointed. And that's probably the reason the legislature enacted 18- Counsel, is it your contention that the district court's failure was in not appointing counsel for him or in not conducting a hearing as to whether he should have appointed counsel? I think the first thing that the Court should have done upon indicating it had a doubt over Mr. Lazaro-Romero's competency to stand trial, counsel should have been appointed at that point in time. But I thought that the Court didn't have a doubt. I thought that the government expressed some concerns, and the Court conducted an inquiry and said, no, I don't – I don't – I really don't have any questions about that. The government had expressed a concern over the competency of the defendant to stand judge ordered a competency evaluation to be done on Mr. Lazaro-Romero and for him to be evaluated by a psychologist to determine if he was competent to stand trial. And at that point in time, once the Court appointed a psychologist to do the evaluation, I believe that would constitute a legitimate or strong doubt over Mr. Lazaro-Romero's competency to stand trial. And now that there is a doubt over the defendant's competency to stand trial, I believe that would constitute a legitimate or strong  Now, the question is whether or not Mr. Lazaro-Romero's competency to stand trial has arisen, whether or not he can only intelligently waive his right to counsel, because if he can't stand trial, he certainly cannot be representing himself. But counsel, that's a huge bootstrap. That means that any time there's any concern whatsoever, we're not supposed to conduct a hearing. We just have to appoint counsel. I believe that there is a doubt over the defendant's competency. The doubt was raised by the government, not by Mr. Lazaro-Romero's counsel. He was representing himself. He was representing himself, Your Honor. But he had standby counsel. Standby counsel's role is limited, and he is not entitled or obligated to raise that question. But the whole purpose, once the government raised a concern, then it triggered an obligation to conduct an inquiry. Your claim is that once the government expressed concern, that the district court had to go all the way to saying, all right, it's done. Your Faretto rights are over. I'm terminating you because the government expressed a concern. I believe at that point in time the Court should have appointed counsel and advised Mr. Lazaro-Romero that because there is a doubt arisen over his competency. You're not arguing that he should have appointed counsel for the rest of the trial, are you? You're just arguing that for the purposes. What could have happened as a practical matter was that for the purposes of this period where there was sufficient doubt even in the district court's mind to order a psychiatric evaluation, that the court should have appointed standby counsel, perhaps standby counsel, to represent him during that small period of time. And then if the psychiatric evaluation came back and it showed that, you know, he is competent, then he would go back to representing himself. You're not saying for the rest of the trial. No, Your Honor. What I was saying is at the time that a doubt had arisen over Mr. Lazaro-Romero's competency to stand trial, the district court under 18 U.S.C. 4247, and Godness v. Moran, the U.S. Supreme Court decision, should have appointed counsel for the determination of whether or not Mr. Lazaro-Romero was competent to stand trial during that 90-day period, basically, from June 2005 to September 2005. There should have been counsel readily available and appointed to represent Mr. Lazaro-Romero until a full and adequate determination had been made whether or not he was competent to stand trial. Even if you're correct, was there any harm in this case that no counsel was appointed during this brief period of time? Excuse me? Was there any harm caused by his not having counsel during this brief period of time? Well, I think the harm, and that's one of the questions I know is urged in part by the government, the only, as the government indicated, the only remedy that Mr. Lazaro-Romero or the only adequate remedy, according to the government, would be a retrospective competency hearing. But I believe that's where the prejudice or the harm is. If you look at the report, if you look at some of the documents that were submitted by the government in their sentencing position at pages, it's the excerpts of the There was some indication in the psychological report, let me back up, that Mr. Lazaro-Romero was subjected during his childhood to seeing numerous people being killed. And in the government's position basically supports that because from 1980 to 1992, there was that civil war in Mr. Lazaro-Romero's home country. And that basically substantiates Mr. Lazaro-Romero's claim that he was subjected to seeing numerous people killed. Now, what would that indicate?  It would indicate that Mr. Lazaro-Romero was subjected to seeing numerous people   It would indicate that Mr. Lazaro-Romero was subjected to seeing numerous people being killed. So the guy can't ever stand trial? Is that your contention? Okay. So he cannot stand trial? Your Honor, I believe that the trauma that Mr. Lazaro-Romero readily apparently had suffered as a child would suffer with indicated diagnosis of post-traumatic stress disorder. I can see that readily just from based upon some of my other clients' problems. Did a psychologist diagnose that? No. That's the concern that I have. I believe any counsel that had read any ability whatsoever would have simply looked at this report, which was inaccurate, which simply just anti-social disorder. It's not even anti-social personality disorder. It's not even a DSM-IV diagnosis. But a DSM-IV diagnosis of PTSD would substantially indicate the fact that the psychologist missed it. What remedy do you want from us? If you win, what do you want? I believe a reversal in a new trial would be the only appropriate remedy. I'm going to backtrack to my reply brief where I thought maybe a retrospective competency determination might be appropriate because he didn't have counsel. All the cases that have indicated where you can look back and determine what occurred back then, he didn't have the assistance of counsel. What could have been done and what might have been done and what should have been done was not done because he did not have the assistance of counsel. And what could have been done, now we go back three years, two years later, and we look at Mr. Lazaro-Romero and we do another psychological evaluation. That's not going to be efficient. The previous psychological evaluation was deficient. Nobody challenged it. Nobody contested it. So how can you retrospectively go back and determine what happened in 2005 if there was never a competent evaluation done in the first place and nobody there to know what they were doing to even challenge the evaluation? Based upon that, the only adequate remedy would be a new trial. Thank you. Good morning. Good morning. May it please the Court. Defendant's challenge... Can we get your name for the record, please? Lamar Baker for the United States, Your Honor. Thank you, Mr. Baker. Defendant's challenge on appeal is not really about whether the district court arrived at the right result. The facts, which are essentially undisputed, show that the defendant had, in the words of this Court, some minimal understanding of the proceedings that is required to be competent. Instead, defendant's challenge is about whether Judge Marshall followed proper procedure. But procedurally, just as substantively, the record shows that the district court acted completely properly. In other words... I have a question. Is competency to stand trial the same as competency to cooperate in the presentation of your defense and assisting your counsel in representing you? Are those the same standards? They're somewhat the same. I think one is essentially a subpart of the other. In other words, the competency formulation originally comes from the Dusty case out of the Supreme Court. And Dusty says you have to have this rational understanding of the proceedings and the ability to assist counsel in the preparation of the defense. So those are the two elements that the Court looks at. But I think... Is that the same as actually being able to represent yourself? In other words, I think what the Court's question is getting at is specifically whether or not that there is some issue with respect to a heightened competency standard when you are pro se or your ability to proceed pro se. And I think that that's something that the Supreme Court has expressly rejected in the Feretta case. If you recall, in the Feretta case, what happens is the Court examines the defendant and says, well, tell me about the hearsay rules. Tell me about challenging jurors for cause. And... There is, and just going through the colloquy that's required by Feretta, what the defendant who can meet certain standards of understanding of the proceedings and knowledge, not just helping their lawyer, but can actually do it and they know what they're getting into when they're doing it, right? I think to some extent, yes. To some extent, no, Your Honor. In other words, it's clear that the defendant to be competent has to have, in the words of the United States of Hernandez, some minimal understanding of the proceedings against him. On the other hand, I don't think competency refers at all to the defendant's competence at trial in the sense of will he be an effective cross-examiner. That was expressly what the Court said you couldn't rely on in the Feretta case because in Feretta the Court denied self-representation because he thought the defendant wasn't familiar enough with the hearsay rules. Well, I guess what I'm getting at is I've read this report and I've read, this is kind of a standard kind of report out of the MDC that I've seen before, and it seems to me that the evaluator is using the same standard. He's saying that he has an adequate capacity to cooperate and assist counsel in his defense. So the same standard regardless of whether he's representing himself or not. Because he doesn't say he has an adequate capacity to represent himself. I don't believe that, I mean, I think it's ultimately a question of the formulation of the text, and this is something that Judge Marshall and government counsel were going back and forth on June 16th when the original hearings took place. It's somewhat unclear as to, you know, how the representing himself relates to assistance of counsel, but I think ultimately that question is answered by Justice Kennedy's concurrence in Godinez v. Moran. Because in Godinez, Justice Kennedy states that what we're really looking at in terms of the defendant's ability to assist his counsel in preparing a defense, is that provides some indicia of the defendant's understanding of the proceedings. It's not simply a separate inquiry. And I think so that's what we're looking at, is whether the defendant has some minimal understanding of what's going on, and on this record he clearly did. Well, if he had been represented by counsel during this period, then counsel would be having the same discussion with the court that we're having now. He would be challenging this report, saying the psychiatrist didn't use the correct standard. That may be so, but I think what's important, Your Honor, is that neither by statute nor constitution is the defendant entitled to counsel for that limited period of time. It's simply not a critical stage of the proceedings. This is not a critical stage determining whether or not he's competent to stand trial. That's not a critical stage of the proceeding? It's clear that a competency hearing under the Sturgis case, Your Honor, is a critical stage. But this period from June 16th to September 19th is not a critical stage. Why is it not critical to be able to challenge a psychiatric evaluation? Let me explain. That goes to the Supreme Court's decision in Estelle v. Smith, Your Honor. In Estelle, the court said that you need to be able to consult with counsel prior to submitting to a psychological evaluation, because there may be a Fifth Amendment concern. In particular, in Estelle, it was the fact that this psychiatric evaluation was going to be used to essentially establish future dangerousness at a death penalty phase. But this is a pure competency evaluation, Your Honor. There is no insanity issue. There is no future danger. There is a right. Let me point out a paragraph that particularly troubled me. The evaluator says, Mr. Laszlo was able to articulate an adequate understanding of appropriate courtroom behavior and the challenging of prosecution witnesses. For example, when asked what he could do if someone told a lie about him on the stand, Mr. Laszlo replied, tell my attorney. Well, he didn't have an attorney. Wouldn't that cause someone to call into question whether he really understood what was going on? No, Your Honor. I believe what he's referring to there is standby counsel, which he had throughout this entire time. Specifically, that was Mr. Lannan. But independent of that, independent of the psychological evaluation. How do we know that's what he was referring to? The examiner was never, never testified, was never cross-examined about this. How do we know what he meant? Well, I think that we know what he meant in terms of, because there's other portions of the psychological report that reflect that he is now, he said he was now proceeding pro se. Right. But it's inconsistent here. I don't, Your Honor, I respectfully don't believe that it's inconsistent. I think that what he's saying is he's pro se, but he had the assistance of a paralegal. He had the assistance of standby counsel. But even independent of the evaluation, you have the fact that the defendant doesn't report any history of mental illness or mental problems. There's no bizarre behavior or emotional outbursts in court. Well, why didn't the government raise it to begin with if, you know, there wasn't something going on? I mean, the government, I've not seen a trial where the government raises the question. I think what happened is essentially to protect the record. And that's sort of why we find ourselves here. What happened is on June 9th, the defendant appears sad because of his mother's death. Nothing happens before June that bears at all on competency. But then the parties come in for a status conference on June 16th. And at that time, the court, Judge Marshall says, well, I had MDC staff speak with the defendant because I was concerned about what effect his mother's death would have. And they advised me that there's no concern with his ability to proceed. Government counsel then asks, well, it becomes clear that there was no specific competency determination made in that letter that Judge Marshall received from him. Well, what became clear was that there was a possibility of reversible error because it might turn out that he was incompetent. I think what became clear, Your Honor, is the fact that there was just simply not enough information in the record. And so the government said, well, I think maybe we should have a full evaluation. But that, of course, was contradicted by the three people who knew this defendant the best, his standby counsel, his paralegal, and his prior counsel, Mr. Castile, all who had no doubts whatsoever about his competence. So I think when you add the fact that none of the people who knew him best under the Hernandez v. Il's case had any doubts about his competence, the fact that there were no outbursts in court, the fact that there was no history of mental illness, there was nothing about the illegal reentry charge. It just seems to me we're having the argument that should have taken place had he been represented by counsel at a, at that particular stage. Well, I think the other thing I did want to mention, Your Honor, is that I, for the reasons that I was explaining earlier, I don't believe that this was a critical stage in the Estelle case because this was a pure competency evaluation. But if it is, then this Court has the somewhat inenviable task of balancing the assertion of two constitutional rights. In the Purnett case that the defendant relies on, the competency issue arises before the Feretta colloquy. And in this case, it only arises, if at all, after. So at this point, this defendant has a constitutional right to represent himself under Feretta. There is no issue with the Feretta colloquy. It's not even challenged on appeal. If you are going to terminate that right to self-representation based on a mere  now you're balancing two constitutional rights that the Purnett court and the competency issues arose earlier. And I submit, Your Honor, that there's just simply not enough of a basis on this record particularly to say that there was that doubt. But even if there was, we're still here on plain error review, Your Honor. And on plain error review, this record shows that the defendant was competent. There is no miscarriage of justice here. So even if there was error, even if this Court didn't want to fashion a different rule, you look like you were going somewhere, Your Honor. I'm following Your Honor. You know, a lot of my colleagues are very critical of Feretta. And this is one of the reasons why it creates this sort of problem. I understand that, Your Honor. But I think that there was no harm here. There was no error that contaminated the entire proceedings. I see that my time has expired. I'm happy to conclude. I'm happy to answer further questions of the Court. But basically, Your Honor, I believe that there was no error. There was no substantial evidence of incompetence on this case. Even if there was error, it's not plain error and the conviction should be affirmed. We haven't talked about the Miranda advisement. And we're not going to either, because you're out of time. Thank you. Mr. Crawford, you've got about a minute and change left. Your Honors, I believe, first off, the determination whether or not a criminal defendant is competent to stand trial would obviously have to be a critical stage of the proceeding. There's numerous cases that I don't have in front of me, but it's well settled that arraignments are a critical stage of the proceeding, status card critical stage of the proceeding. It's at the arraignment where you make a determination whether or not to plead to the indictment, whether or not to enter a not guilty plea. Would you address one question that Judge Wardlaw put to Mr. And that is, whether the standard for the competency to stand trial is the same as the competence to present one's own defense. I'm sorry. The inquiry as to whether one is competent to stand trial, whether that is the same standard as whether one is competent to present one's own defense. Whether or not a subject. Are those the same inquiries, the same level of competence required to represent yourself as it is to stand trial. That is, if you can stand trial, then presumably you could also represent yourself if you chose to. If a subject is found to be competent to stand trial, then I believe that they would be competent in order to present their own defense. I don't have a problem with that. You believe then that the standard is the same. I would agree with that. I don't have any case law to substantiate that. But more importantly, there has to be a determination, first off, that the subject is competent to stand trial. And in order to determine if a subject is competent to stand trial, the safeguards under Godinez v. Moran and 18 U.S.C. 4247 must be complied with fully. Mr. Baker raised a point that concerns me. Okay. Let's assume it's a critical stage of the proceeding. If the defendant has the right to represent himself and wants to insist on it, and the judge says, just because the prosecutor has a question, I'm not going to let you represent yourself for the next few days, that's 90 days, wouldn't he have an argument that his forerunner rights were violated by imposing counsel on him when he doesn't want it? I believe that would have to be determined on a case-by-case basis. Well, here's the case. Here's the case, and I don't believe there would be any error or any problem with that, because in this particular case, a question had arose. The government had raised it. The prosecutor says, I've got a question. Okay. So then the judge is going to deprive him of his right of self-representation because the government says we have a question. What the judge did was have a psychologist interview him, and the psychologist comes back and says there's nothing wrong with him. But Feretta had indicated what is critical. In order for a subject to be entitled to represent himself, the waiver or the waiver of the right to counsel must be knowing and accountable. So if you're correct, the government, by virtue of saying we have a question, could deprive him of his right to self-represent. I don't believe the government would have that type of. Well, you're just saying that's what the judge should have done. If Mr. Baker says we've got a question, the judge is supposed to say, time out, you no longer can represent yourself for the next X period of time. I believe the judge should have gone over the Feretta advisement again with the defendant. He should have advised him. There's a question. So that's the only error here, that the judge didn't do the Feretta advisement again. Is that what you're saying? No. I'm saying the error is that the judge should have gone over the Feretta advisement and likely should have appointed counsel, probably under 18 U.S.C. 42. Should have forced a lawyer on him. That's what you're saying. Notwithstanding his Feretta right, he should have had a lawyer forced on him because the government raised that question. Your Honor, when you're saying the Feretta right, the Feretta right is not absolute. The Feretta right is subject to the waiver of the right to counsel being knowing and intelligent. If a subject is not competent to stand trial, he's certainly not competent to waive his right to counsel. Were you the trial counsel? No, Your Honor. You were the standby counsel. No, I was not. Mr. Landon was. I'm sorry. Government counsel, were you present at the trial? I was trial counsel, but I only came on, Your Honor, about three or four days before. Counsel, Mr. Baker, you were not the counsel who raised objections or raised concerns about? That's correct. That was a previous assistant U.S.C. assistant. Your Honor, let me see if there are any further questions from Judge Wardlaw or Judge Bybee. Judge Bybee? Judge Wardlaw? I just, one question I've got is, do you agree that plain error is the standard? No, Your Honor. I believe the Court should be applying the Chapman standard of review or potentially reversible per se because the right to counsel, deprivation of the right to counsel typically is reversible per se. There is a couple of authorities that I cited in my brief, however, that indicated that the appropriate standard of review for depriving a subject of the right to counsel would be reviewable under Chapman whether or not the error or the deprivation of counsel is harmless beyond a reasonable doubt. And I guess that goes into whether or not the appropriate remedy in determining whether or not the error was harmful or whether it was harmless beyond a reasonable doubt. And that goes into whether or not there should be that retrospective hearing. And I believe in this particular case, because Mr. Lazaro-Romero did not have counsel representing him at the time, in order to present evidence or to counter or to attack the evaluation at MDC over the subject's or Mr. Lazaro-Romero's competency to stand trial, looking back at it retrospectively would be inadequate, and the only appropriate remedy would be a new trial. All right. Thank you. Thank you, Your Honor. Thank you, gentlemen. The case will start at this committee.
judges: Silverman, Wardlaw, Bybee